1 .THIBODEAUX, Judge.
In this workers’ compensation case, Kathleen Ceasar Thomas appeals a summary judgment rendered by the workers’ compensation judge (WCJ) in favor of Mai-son De St. James (Maison) pursuant to La.R.S. 23:1208. The WCJ found that Ms. Thomas committed fraud when she worked for wages while continuing to receive workers’ compensation indemnity benefits in the form of temporary total disability benefits (TTD). Ms. Thomas also asserts that the WCJ did not follow proper sum *767 mary judgment procedure pursuant to La. Code Civ. P. art. 966 in that she allowed the introduction of an affidavit on the date of the hearing on Maison’s motion for summary judgment.
I.

ISSUE

The issue in this case is whether the WCJ erred by granting St. James’ summary judgment finding that Ms. Thomas violated La.R.S. 23:1208.
II.

FACTS

Ms. Thomas was employed as a certified nurse assistant (CNA) at Maison, a nursing home facility and began her shift at 6:00 a.m. On March 22, 2001, she was assigned to work in “section A” of the facility. The patients in “section A” are totally incapacitated. However, an hour and a half into her shift, she was assigned to work in “section B” of the facility where there are both incapacitated patients and patients who can somewhat take care of themselves. At approximately 8:15 a.m. Ms. Thomas, without help from another CNA, attempted to assist a totally incapacitated patient from her bed to a commode in her room. First Ms. Thomas sat the patient up Lin bed, placed her arms underneath the patient’s arms and turned her body toward the commode. Ms. Thomas testified in her deposition that the patient was a big lady. Ms. Thomas was able to get the patient onto the commode chair, but while pivoting her from the bed to the commode, the patient’s body went one way while Ms. Thomas went the other. It was at that point that Ms. Thomas felt something pull in the center of her upper back. Although she was able to get the patient on the commode, she was unable to return the patient to the bed due to the pain in her back. Ms. Thomas reported the pain to her supervising nurse, Kim Bias (Nurse Bias). With the assistance of Nurse Bias, Ms. Thomas was able to get the patient back into the bed.
Ms. Thomas testified in her deposition that she was able to work a few more hours, but was unable to finish her shift. At approximately 10:00 a.m., the nursing home administrator, Mr. Fellows, called Ms. Thomas into his office and told her to go home. Mr. Fellows was able to get an afternoon doctor’s appointment for Ms. Thomas. That afternoon, Ms. Thomas saw Dr. Seep. By the time she saw Dr. Seep, she was experiencing pain in both her upper and lower back. Dr. Seep ordered that Ms. Thomas undergo physical therapy. Ms. Thomas underwent physical therapy for about two weeks. During this time she was not at work and about three weeks after the accident, she began receiving workers’ compensation indemnity benefits.
Ms. Thomas decided to meet with a lawyer. It was at this time she requested to be seen by another doctor. Ms. Thomas saw Dr. Cobb on August 1, 2001. She testified in her deposition that the pain in her back had worsened. Ms. Thomas’ treatment with Dr. Cobb included diagnostic x-rays, an MRI and pain medication. She did not get the results of the MRI and she did not see Dr. Cobb again because workers’ compensation would not pay for the visit.
LOn May 9, 2001, Ms. Thomas filed a disputed claim for compensation. In her disputed claim, Ms. Thomas alleged that she was being underpaid weekly compensation benefits, that she was not allowed her choice of physician and her prescriptions were not being paid. In connection with defending the case, Maison took Ms. Thomas’ deposition on October 2, 2001. During the course of the deposition, Ms. *768 Thomas admitted that she was working as a sitter for an elderly gentleman from mid-June through August 2001 for seven days a week, eight hours a day. Ms. Thomas described her job duties as basically keeping him company because he was mobile and could do a lot of things on his own. She further admitted that she was paid $6.00 per hour in cash. Ms. Thomas’ job sitting for the elderly gentleman ended when he had a stroke and had to be hospitalized. She did not report to her employer or the OWC that she was receiving money. Ms. Thomas claimed that she did not know there was a problem with earning money at the same time she received workers’ compensation indemnity benefits although she admitted that she signed “Form 1025 Certification of Compliance” that informed her that it was unlawful to willfully make false statements or misrepresentations in order to obtain workers’ compensation benefits.
Consequently, on November 16, 2001, Maison filed a motion for summary judgment alleging that Ms. Thomas violated La.R.S. 23:1208. The WCJ granted Mai-son’s motion. It is from this judgment that Ms. Thomas appeals, requesting that this court reverse the judgment of the WCJ and remand for further proceedings.
Jill.
LAW AND DISCUSSION Summary Judgment
In Baker v. Murphy Oil USA, Inc., 01-1299, pp. 3-4 (La. 4 Cir. 4/10/02); 816 So.2d 329, 331, the fourth circuit explained the summary procedure as follows:
The appellate court standard of review of summary judgments is de novo. Smith v. Our Lady of the Lake Hospital, [93-2512 (La.7/5/94); 639 So.2d 730]; Walker v. Krpop, 96-0618 (La.App. 4 Cir. 7/24/96); 678 So.2d 580. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Two Feathers Enterprises v. First National Bank, 98-0465 (La.App. 4 Cir. 10/14/98); 720 So.2d 398, 400. This procedure is now favored and shall be construed to accomplish these ends. La.Code Civ.P. art. 966(A)(2). This standard of review requires the appellate court to look to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to show that there is no genuine issue as to a material fact, and that the mover is entitled to a judgment as a matter of law. La.Code Civ.P. art. 966(B). In order to prevail on a motion for summary judgment, the movant must show “that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact.” South Central Bell Telephone Co. v. Sewerage and Water Board, 95-0949 (La.5/19/95); 654 So.2d 1090. Both the evidence and all inferences drawn from the evidence must be construed in favor of any party opposing the motion, and all doubt must be resolved in his favor. When faced with a supported motion for summary judgment, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.Code Civ.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323, 326. The initial burden of proof remains with the mover and is not shifted to the nonmoving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the court consider the evidence in support of the opposi *769 tion showing the existence of specific facts establishing a genuine issue of material fact. Scott v. McDaniel, 96-1509 (La.App. 1st Cir.5/9/97); 694 So.2d 1189, 1191-92. If the mover carries the burden and the non-moving party fails to show in his opposition that there 14s no genuine issue of material fact, summary judgment should be granted. La.Code Civ.P. arts. 966 and 967. Pursuant to La.Code. Civ.P. art 966(C)(2), what the mover of a summary .judgment must prove depends on [the] party [that] will bear the burden of proof at trial. The defendant need not negate all essential elements of the plaintiffs claim, action or defense, but can rather simply point out to the court that there is an absence of factual support for one or more elements of the claims.
Thus, in the present case, once Maison negates a necessary element of Ms. Thomas’ claim, the burden then shifts to Ms. Thomas to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial. Moody v. City of New Orleans, 99-0708 (La.App. 4 Cir. 9/13/00); 769 So.2d 670, writ denied, 00-2809 (La.12/8/00); 776 So.2d 468. “Whether or not a true ‘material fact’ exists ... is based on whether [it is] a fact “whose existence or nonexistence may be essential to appellant’s cause of action under the applicable theory of recovery, i.e. one that would matter on trial of the merits.’ ” Id. at 671.
Louisiana Revised Statutes 23:1208
Ms. Thomas admitted that she worked a full time job, earning more than her pre-injury wages, while still receiving TTD benefits, and that she failed to inform the OWC about this employment. Louisiana Revised Statutes 23:1208 provides for penalties with respect to misrepresentations concerning workers’ compensation benefit payments as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
 (¡The Louisiana Supreme Court in Resweber v. Haroil Construction Company, 94-2708, p. 7 (La.9/5/95); 660 So.2d 7, 12 interpreted and applied the provisions of La.R.S. 23:1208:
Section 1208 is clear and unambiguous and as such will be applied as written. La.Civ.Code art. 9; La.R.S. 1:4. Section 1208 clearly applies to any willful false statements or representations made “for the purpose of obtaining or defeating any benefit or payment.” Section 1208 has no language limiting it to only certain types of false statements, i.e., statements other than those relating to prior injuries. The legislature has imposed no notice requirements in Section 1208, apparently being of the opinion that any claimant should be on notice that false statements made willfully for the purpose of obtaining workers’ compensation benefits will not be tolerated and will result in the forfeiture of those benefits. The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.
Thus, to prevail on its La.R.S. 23:1208 claim, Maison had to prove three things, (1) a false statement or representation, (2) *770 willfully made by Ms. Thomas, and (3) made for the purpose of obtaining any workers’ compensation benefit or payment.
At the hearing on Maison’s motion for summary judgment, Maison presented OWC Form 1025 “Certification of Compliance” signed by Ms. Thomas. The certification of compliance informed Ms. Thomas that it was unlawful to receive both workers’ compensation benefits, with the exception of supplemental earnings benefits (SEB), and earn wages at the same time. The form also advised that it was unlawful for her to willfully make a false statement or misrepresentation to obtain workers’ compensation benefits as well as the penalties therefore. Further, the compliance certification advised Ms. Thomas that she must notify her employer or insurer of “the earning of any wages, changes in employment or medical status, receipt of social security benefits, and receipt of retirement benefits.” In her 17deposition, Ms. Thomas admitted that she could read and write the English language and that she signed the form. In connection with its proof that Ms. Thomas was advised against making false statements and/or misrepresentations, Maison submitted the affidavit of its administrator, Mr. Hugh Fellows. Mr. Fellows’ affidavit simply stated that Ms. Thomas was asked and given the opportunity to read Form 1025 prior to signing the form.
Mr. Fellows’ affidavit was submitted to the court on the date of the summary judgment hearing. Ms. Thomas asserts that the WCJ erred when she allowed Maison to submit the affidavit on the date of the hearing in violation of La.Code Civ.P. art. 966(B), that requires any supporting affidavits to be served at least ten days before the date of the hearing. However, Maison served an unsigned copy of the affidavit on Ms. Thomas far more than ten days before the summary judgment hearing. All that was done on the date of the summary judgment hearing was to submit to the WCJ a signed copy of Mr. Fellows’ affidavit. The content of the affidavit timely served on Ms. Thomas and the one submitted to the WCJ at the summary judgment hearing was the same. In Stewart v. Carter, 33,203, p. 2 (La.App. 2 Cir. 5/10/00); 759 So.2d 297, 298, citing Anderson v. Allstate Insurance Company, 93-1102 (La.App. 1 Cir. 4/8/94); 642 So.2d 208, 213, writ denied, 94-2400 (La.11/29/94); 646 So.2d 404, the second circuit discussed the purpose for the ten-day period between service and hearing of the motion for summary judgment:
The requirement of La.C.C.P. art. 966(B) that the motion for summary judgment be served at least ten days before the time specified for the hearing is designed to give fair notice of the evidentiary and legal bases for the motion. The adverse party then has time to respond with evidentiary documentation of his own, either in the form of affidavits or discovery devices, and to be prepared to meet the legal argument of the moving party.
| sIt is clear in the present case that Ms. Thomas had fair notice of the contents of Mr. Fellows’ affidavit far in advance of the summary judgment hearing. Thus, this assignment of error is without merit.
Maison also introduced Ms. Thomas’ deposition taken by Maison in connection with its defense to Ms. Thomas’ action. In -her deposition, Ms. Thomas admitted that she worked a full-time job while still receiving TTD benefits, and that she did not inform Maison of this employment. At the hearing on the motion for summary judgment, Ms. Thomas did not come forward with any evidence to negate the fact that she committed fraud in obtaining workers’ com *771 pensation benefits in violation La.R.S. 23:1208. Therefore, in accordance with La.Code Civ.P. art. 966, we find that the WCJ was correct in granting Maison’s motion for summary judgment since there was no genuine issue of material fact concerning Ms. Thomas’ commission of fraud.
IV.

CONCLUSION

For the above reasons, the judgment of the workers’ compensation judge granting summary judgment to Maison de St. James is affirmed with all costs of this appeal assessed to Ms. Kathleen Ceasar Thomas.
AFFIRMED.